UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                      Chapter 7

Romel E. Casab,                                             Case No. 13-45609

      Debtor.                                           Hon. Phillip J. Shefferly
_____/

Wendy Turner Lewis, Chapter 7 Trustee,                      Adversary Proceeding
                                                            No. 14-04205-PJS
      Plaintiff,

v.

Romel E. Casab,

      Defendant.
_____/

**OPINION GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT DENYING DISCHARGE**

<u>Introduction</u>

This matter is before the Court upon a complaint filed by the Chapter 7 Trustee ("Trustee")

against the Debtor, Romel E. Casab ("Debtor"), seeking to deny or revoke the Debtor's discharge

under § 727(a)(6)(A) and § 727(d)(3) of the Bankruptcy Code because of his refusal to obey an order

of this Court.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  The Trustee has moved for summary

judgment.  For the reasons set forth below, the Court grants the motion.

<u>Facts</u>

The following facts are not in dispute. They are all taken either from the Trustee's and the Debtor's pleadings relating to the Trustee's motion for summary judgment, or by judicial notice of the extensive filings and hearings in the Debtor's Chapter 7 case, which the Court is permitted to do pursuant to Fed. R. Evid. 201. <u>See</u> <u>Harrington v. Vandalia-Butler Board of Education</u>, 649 F.2d 434, 440 (6th Cir. 1981) (citing in part <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147, 157 n.6 (1969)).

The Debtor filed his voluntary Chapter 7 petition on March 21, 2013. On July 2, 2013, the Trustee filed a motion for an examination under Fed. R. Bankr. P. 2004. Although the Debtor filed an objection to the motion, the parties agreed to the entry of an order granting the Trustee's motion. On August 7, 2013, the Court entered a stipulated order ("Rule 2004 Order") (ECF No. 81)[1] resolving the Trustee's motion, and specifying a list of documents that the Debtor was required to produce to the Trustee on or before September 13, 2013. The Debtor did not produce any of the documents by that deadline.

On October 7, 2013, the Trustee filed a motion for an order holding the Debtor in contempt. After the Debtor filed a response, the Court held a hearing on November 25, 2013 (transcript at ECF No. 196), and granted the motion by order entered on December 5, 2013 ("Contempt Order") (ECF No. 133). The Contempt Order found the Debtor in contempt for his failure to comply with the Rule 2004 Order, but also provided that the Debtor could purge himself of the contempt finding by producing each and every document identified in the Rule 2004 Order, unless production by him was impossible. To the extent that the Debtor claimed impossibility, the Contempt Order required

---

[1] The ECF numbers in this opinion refer to docket entries in the Debtor's Chapter 7 case, not to docket entries in this adversary proceeding, unless otherwise indicated.

-2-

the Debtor to file an affidavit identifying with specificity each document that he could not produce and explaining in detail why production was impossible. The Contempt Order also required the Debtor to pay the Trustee $500.00 of attorney fees. The Contempt Order imposed a deadline of December 9, 2013 for the Debtor to perform these obligations.

On December 10, 2013, the Trustee filed an affidavit of non-compliance (ECF No. 137). According to the affidavit, the Debtor had paid the $500.00, but the Debtor had neither produced any documents nor filed an affidavit of impossibility. After the Trustee filed her affidavit, the Debtor filed his own affidavit (ECF No. 138) on December 10, 2013, stating that he had produced what was in his possession and that he did not have copies of any of the other documents listed in the Rule 2004 Order. On December 12, 2013, the Trustee filed a second affidavit of non-compliance (ECF No. 140), acknowledging the Debtor's partial compliance with the Rule 2004 Order, but stating that of the documents produced, some were not responsive and, in any event, the vast majority of the documents that were required still had not been produced.

Based upon the competing affidavits, the Court scheduled a hearing for January 3, 2014. At the hearing, the Trustee went paragraph by paragraph both through the Rule 2004 Order and through the Debtor's affidavit, identifying where the Debtor had complied with the Rule 2004 Order and where he had not. The Debtor argued that he had produced all of the documents that he possessed, and that was all he was required to produce. The Court ruled that the Debtor's affidavit was insufficient to purge the Debtor of contempt. However, the Court postponed considering whether to take any additional action until after the Trustee completed the deposition of the Debtor that she had scheduled pursuant to the Rule 2004 Order. The Court did so both to provide the Debtor with a full opportunity to explain why he had not produced the documents required by the Rule 2004

Order, and to ensure that the Court had the benefit of any explanation given by the Debtor before deciding whether to take any further action.

On January 20, 2014, the Trustee conducted the deposition of the Debtor. On February 3, 2014, the Trustee filed a copy of the deposition transcript ("Deposition Transcript") (ECF No. 165). On February 19, 2014, the Court held the adjourned hearing (transcript at ECF No. 197). The Trustee argued that the Deposition Transcript demonstrated that the Debtor could not explain why he did not retain even basic documents regarding his finances, that he made little or no effort to obtain them, and that he had produced only a couple of documents at the deposition that were not even close to being responsive to the requirements of the Rule 2004 Order. Further, the Trustee argued that even as of the date of the hearing, the Debtor had still failed to produce the vast majority of documents required by the Rule 2004 Order, although the Trustee conceded that the Debtor had produced some of the required documents. Through counsel, the Debtor did not contend either that he had produced all of the required documents, or that he had taken any steps to obtain those documents that were not in his possession, although he did state that his wife was trying to obtain some of the missing documents.

The Court observed on the record at the hearing that it had thoroughly read the Deposition Transcript and that the Deposition Transcript left the Court with the firm impression that the Debtor did not take his responsibilities as a debtor seriously, and that he made no attempt to comply with the Rule 2004 Order. The Court then read extensively from the Deposition Transcript into the record, including the following exchanges.

-4-

First, the Court read from pages 14-17 of the Deposition Transcript the Trustee's questions and the Debtor's answers concerning his bank account records, statements, cancelled checks and check registers covered by the Rule 2004 Order:

> Q. [D]id you produce any documents in response to this item?
> A. I don't have any documents for that item.
> Q. You don't have any bank statements?
> A. None.
> Q. Why?
> A. They're not in my possession.
> Q. Whose possession are they in?
> A. The government.
> . . .
> Q. When did the government come into possession of them?
> A. The 13th of April, 2011.
> Q. So even if that's the case, why don't you have any bank statements for the period April 14, 2011 through March of 2013?
> A. I don't have no bank statements for them years. I don't have them.
> Q. Why not?
> A. Because I don't have them. I don't know.
> Q. Did you have bank accounts at that time?
> A. I had bank accounts but most of them didn't have nothing in them, so I didn't have nothing. I don't know.
> Q. Did they send you bank statements?
> A. I don't remember.
> Q. Did you throw them away?
> A. To tell you the truth, I don't remember. I don't have no bank accounts right now. No bank accounts, no savings, nothing.
> . . .
> Q. Did you take any action after you received a copy of the [Rule 2004] order requesting these documents to obtain them? Did you call the bank?
> A. No, it's too long ago. Banks don't look that up. I tried to find something once and it's too far gone.
> Q. So did you call each of the banks at which you had accounts?
> A. No.
> Q. Did you go into the bank branch and ask them?
> A. No.
> Q. So did you try using any sort of online banking to obtain the statements?
> A. I don't know how to do that.
> Q. So basically, after you received a copy of the order, you didn't take any steps to try and obtain the bank statements.
> A. I don't have them in my possession.

-5-

. . .
Q. The question is, did you take any steps after you received a copy of the order to
get them from the bank or otherwise, from the government agency?
A. No.

Next, the Court read from pages 18 and 19 of the Deposition Transcript the Trustee's

questions and the Debtor's answers concerning his state income tax returns for 2007 through 2009

and then his federal and state income tax returns for 2010 through 2012:

Q. Why didn't you produce the State returns for those years?
A. I don't know. . . . I don't know. I don't do taxes. I never did them.
. . .
Q. So 2010 through 2012?
A. Never been filed.
Q. Do you plan on filing them?
A. Zero. I have nothing. I have nothing.
Q. So you haven't taken any steps to try and get these prepared?
A. I just don't feel right right now.

The Court then read a similar exchange from page 29 of the Deposition Transcript between

the Trustee and the Debtor concerning deeds for properties that the Debtor had at one time owned

according to the schedules he filed in his Chapter 7 case.

Q. After you received a copy of this order, did you take any steps to obtain a copy
of the deed?
A. I don't remember, to tell you the truth.

Next, the Court read an exchange from page 30 of the Deposition Transcript regarding a

settlement statement for the sale of real property by the Debtor.

Q. So you didn't take any steps to try to obtain it?
A. No.

The Court then read from pages 38 to 39 of the Deposition Transcript the Trustee's question

and the Debtor's answer regarding production of the Debtor's credit card statements.

Q. Going back, when I'd asked about credit card statements, did you take any steps
to obtain credit card statements to give to us?

-6-

A. No. I thought I already listed them and I thought that was the end of it.

Next, the Court read from page 40 of the Deposition Transcript the following exchange when the Trustee asked the Debtor about the titles to the vehicles that he listed on his schedules, some of which were seized, some repossessed, some sold and some unaccounted for.

Q. Do you have the title for the vehicles?
A. No.
. . .
A. I don't have none of the titles.
. . .
Q. Why not?
A. Because they're not in my possession since 2011.
Q. So these are in the possession of the government agency?
A. Yeah. Good luck.

Finally, the Court read from pages 50 and 51 of the Deposition Transcript the Debtor's testimony that the reason why the Debtor could not produce the documents described in the Rule 2004 Order was because the Drug Enforcement Agency ("DEA") had seized many items of personal property and records.

Q. . . . Did they provide you with an inventory of items that were seized, anything like that?
. . .
[A.] Yes.
Q. Do you have a copy of that receipt with you?
A. No.
Q. Can you get me a copy of that receipt?
A. No.
. . .
Q. Did you call them and ask for another copy?
A. No, no, no. no. I'm not calling them for nothing.
Q. So have you taken any steps to get us this receipt?
A. No.

-7-

The Court then explained that "those instances that I just read from are examples. They're illustrative" of how the Debtor has responded to the Rule 2004 Order. The Court held that the Debtor's deposition testimony did not purge the Court's finding of contempt:

> In order to purge this finding of contempt, the debtor would have to show that the debtor has complied with the Court's order or, alternatively, that it is impossible for the debtor to comply with the Court's order. The Court had adjourned the hearing to permit the parties to file the transcript of the examination with the Court. The Court has now had the opportunity to review it. The Court is not persuaded that the testimony by the debtor at that examination either demonstrates compliance with the order to result in a finding of purging the contempt citation or, alternatively, a finding of impossibility. The impression I have is the debtor thinks it's too much trouble but, in any event, hasn't taken the steps even to try to obtain many of the documents that are requested, so the debtor has not purged the finding of contempt and has failed to demonstrate impossibility.

Notwithstanding the Debtor's failure to purge the finding of contempt, the Court was still reluctant to grant the Trustee's request for additional sanctions which included both substantial monetary penalties and incarceration. The Court decided to give the Debtor one last chance. Based on the representation by the Debtor's counsel that the Debtor's wife was in the process of trying to locate some of the required documents, the Court adjourned the hearing yet again. Through counsel, the Debtor asked for two weeks. The Court accommodated that request and set the adjourned hearing for March 26, 2014. But this time the Court made it clear that the adjourned hearing would be an evidentiary hearing and that the Debtor, and not just his counsel, must attend and testify. The Court set forth the rulings that it made at the hearing in an order dated February 19, 2014 ("Failure to Purge Order") (ECF No. 168), expressly finding that "the Debtor has failed to purge the finding of contempt and remains in contempt pursuant to the Contempt Order." The Failure to Purge Order scheduled an evidentiary hearing for March 26, 2014 and expressly stated that "the Debtor must attend the evidentiary hearing."

-8-

Despite being ordered to attend, the Debtor did not appear at the March 26, 2014 hearing. His counsel had no explanation for his absence. The Trustee noted that the Debtor's wife had emailed a few documents to the Trustee at 9:30 p.m. the night before the evidentiary hearing, but the Debtor had still not fully complied with the Rule 2004 Order. The Court then granted two of the three forms of relief requested by the Trustee, awarding costs and imposing a daily fine of $50.00, but declining the Trustee's request to incarcerate the Debtor. The Court entered an order on April 16, 2014 (ECF No. 194) memorializing its rulings. The order specifically listed each of the documents from the Rule 2004 Order that the Debtor had still not produced.

On April 30, 2014, the Debtor filed a motion for reconsideration (ECF No. 199) of the Failure to Purge Order. He asked for yet another hearing, but not for the purpose of testifying to show his compliance with the Rule 2004 Order, or to show that compliance was impossible. Instead the Debtor asked the Court to shift the his burden to produce the documents under the Rule 2004 Order by requiring the Trustee to appear and testify as to what documents she has in her possession and what documents she does not have. The Court entered an order on May 21, 2014 (ECF No. 200) denying the Debtor's motion for reconsideration.

The Trustee filed her § 727 complaint in this adversary proceeding on February 24, 2014. This was after the February 19, 2014 hearing and after entry of the Failure to Purge Order, but well before the aborted evidentiary hearing that had been scheduled for March 26, 2014. The complaint contains only one count: denial of discharge for refusal to obey a lawful order of the Court. The Trustee alleges that the Debtor refused to obey the Rule 2004 Order, and asks that his discharge be denied under § 727(a)(6)(A) or revoked under § 727(d)(3).

<u>Trustee's motion for summary judgment</u>

The Trustee's motion for summary judgment contends that a refusal to obey a court order can be found based on a finding of civil contempt. Because the Contempt Order has already found the Debtor in contempt for failing to comply with the Rule 2004 Order, there are no material facts in dispute and all of the elements of § 727(a)(6)(A) are met.

The Debtor responds that the Trustee is on a "witch hunt" against the Debtor to find assets that do not exist. In support, the Debtor goes back to the negotiations that led to the Rule 2004 Order and quotes emails between counsel for the Debtor and counsel for the Trustee from July through October, 2013. The Debtor argues that these emails show that the Trustee is now misrepresenting the extent of the documents that the Debtor was required to produce by the Rule 2004 Order. The Debtor also argues that the Trustee has provided no evidence that the Debtor intentionally failed to comply with the Rule 2004 Order, that the Debtor's conduct has prejudiced creditors, or that the Debtor cannot now make amends for his failure to comply with the Rule 2004 Order. The Debtor relies on the affidavit he filed back on December 10, 2013, in which he states that he has diligently searched for the documents he was required to produce, the DEA seized most of the documents required, and he has attached all the records that he was able to find. The Debtor concludes that the Trustee's failure to produce actual evidence to contradict the Debtor's affidavit requires denial of the Trustee's motion.

The Debtor identifies the following as the disputed issues in this case:

> (1) What was agreed to concerning the Rule 2004 Order;
> (2) What is considered a reasonable attempt to comply with it; and
> (3) Was the Debtor excused from performance based on impossibility or impracticability doctrines as pleaded in his affirmative defenses?

-10-

## Summary judgment standard

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256).

## Analysis

Section 727(a)(6)(A) provides that a discharge may be denied if "the debtor has refused, in the case [ ] to obey any lawful order of the court, other than an order to respond to a material question or to testify."

Section 727(d)(3) provides that "the court shall revoke a discharge granted under subsection (a) of this section if . . . the debtor committed an act specified in subsection (a)(6) of this section[.]"

The first element of § 727(a)(6)(A) is that there be a lawful order of the court, other than an order to respond to a material question or to testify. The Debtor does not assert that the Rule 2004 Order is not a lawful order of the Court. Nor does he contend that the Rule 2004 Order requires him to respond to a material question or to testify. However, the Debtor does attack the scope of the Rule 2004 Order based on emails exchanged between counsel for the Debtor and counsel for the Trustee prior to the entry of the Rule 2004 Order. The Debtor argues that these emails show that he was only required by the Rule 2004 Order to produce documents in his possession. The Court rejects this argument.

First, at the November 25, 2013 hearing, the Court already ruled against the Debtor on his argument that the Rule 2004 Order covered only documents that were in the Debtor's possession. The Court held that there was no ambiguity in the terms of the Rule 2004 Order and that the Debtor had expressly stipulated to its entry by the Court. Second, the Rule 2004 Order was entered a year and a half ago, yet the Debtor has never filed a motion for relief from the Rule 2004 Order based upon the theory he now advances, that the quoted emails somehow show that the Debtor's counsel had a different understanding of what the Rule 2004 Order meant to say. Third, even if the Court considered these emails, the emails clearly show that the Trustee did not limit the requested documents to those in the Debtor's possession. The Trustee specifically wanted the Debtor to produce those documents obtainable upon reasonable efforts. The Rule 2004 Order was unambiguous. The Debtor's counsel signed the stipulation providing for its entry. The time to

-12-

challenge the Rule 2004 Order has long ago passed.  The Court does not find any genuine issue of material fact that the Rule 2004 Order was a lawful order of the Court.  Nor does the Court find any genuine issue of material fact as to the scope of that order.

The second element of § 727(a)(6)(A) is refusal to obey the lawful order.  This element requires more than just a failure to comply with an order.  "Failure to comply with a court order, standing alone, is not the equivalent of 'refusal' under § 727(a)(6)."  Solomon v. Barman (In re Barman), 237 B.R. 342, 349 (Bankr. E.D. Mich. 1999).  "Refusal" requires more than inadvertence or mistake.  Instead, it requires "wilful, intentional disobedience or dereliction."  Id. (quotation marks and citation omitted).  The Trustee argues that the finding of contempt in the Contempt Order is sufficient by itself to establish that the Debtor's failure to comply with the Rule 2004 Order was willful and intentional.  The Debtor contends that there are genuine issues of fact regarding whether his failure to comply with the Rule 2004 Order was intentional, and again relies upon the affidavit he filed back on December 10, 2013 to counter the Trustee's affidavit of non-compliance with the Contempt Order.

In their briefs, the Trustee and the Debtor both cite Graham v. Knott (In re Knott), Nos. 12-3027, 11-32473, 2013 WL 1314989 (Bankr. N.D. Ohio Mar. 28, 2013, for its discussion of the word "refused."  In determining whether the debtors refused in that case to obey a court order as a basis to revoke their discharge, the Knott court "equated a refusal to obey a court order with a finding of civil contempt."  Id. at *4 (citing Yoppolo v. Walter (In re Walter), 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001) and Hunter v. Magack (In re Magack), 247 B.R. 406, 410 (Bankr. N.D. Ohio. 1999)).

-13-

In <u>Knott</u>, the Chapter 7 trustee sought to revoke the debtors' discharge under § 727(d)(3) because of their failure to attend an examination and produce documents as ordered to do so under Fed. R. Bankr. P. 2004. The trustee moved for summary judgment. In the context of the trustee's motion, the court in <u>Knott</u> examined whether the debtors were in civil contempt, as there was no prior finding of contempt. The court found that there was no dispute that the debtors had failed to attend the examination and had failed to produce the required documents. <u>Id.</u> at *5. The debtors countered that their non-compliance "stemmed from events beyond their control." <u>Id.</u> at *6. The court recognized that a debtor's "impossibility or an inability to comply with a judicial order is . . . a valid defense to a charge of civil contempt" and thus may refute the allegation that they "refused" to comply with a lawful court order. <u>Id.</u> (quotation marks and citations omitted). However, the court cautioned that the impossibility defense was limited.

> Substantively, the defense put forth by the [debtors] is limited and applies only where, after using due diligence, the person, through no fault of their own, is unable to comply with the court's order. In other words, the contemnor must establish that he has been reasonably diligent and energetic in attempting to comply with the court's mandate by taking all reasonable steps within his power to ensure compliance.

<u>Id.</u> (citation omitted).

In evaluating the debtors' impossibility defense, the court in <u>Knott</u> held that there was one uncontested fact that "lends credibility" to their defense: by the date of the hearing, the debtors had fully complied with the Rule 2004 order in that case by producing the documents and attending an examination. In light of this uncontested fact, and because a revocation of discharge must be strictly construed against the plaintiff, the court ruled that the debtors should "be afforded the opportunity to offer evidence in support of their position 'that they were prevented from attending those examinations by circumstances beyond their control and that their failure to attend was substantially

-14-

justified.'" Id. at *6. Accordingly, the court denied the trustee's motion for summary judgment and allowed the debtors the opportunity to support their impossibility defense. Id. at *7.

Based on Knott, the Debtor argues that this adversary proceeding opens up a new opportunity for him to argue that he is not in contempt because compliance with the Rule 2004 Order is impossible, and also permits him to demand yet another paragraph-by-paragraph list from the Trustee as to what documents are still missing, why the Trustee needs those documents, and why the Debtor does not have them. But there are obvious distinctions between Knott and this case.

First, in this case, prior to the Trustee even filing this adversary proceeding, the Court already made an explicit finding of contempt in the Contempt Order after holding a hearing on the Trustee's motion for contempt on November 25, 2013. Second, unlike the debtors in Knott, the Debtor still has not complied with the Rule 2004 Order. Finally, and most importantly, the Debtor in this case has already been given a second full and fair opportunity to demonstrate impossibility, even after the Court initially made the finding of contempt. The Contempt Order itself expressly permitted the Debtor to file an affidavit of impossibility by December 9, 2013. The Debtor did not do so. The Court still gave the Debtor an opportunity to show impossibility by scheduling a hearing for January 3, 2014, after the Debtor filed a belated affidavit on December 10, 2013 following the Trustee filing her first affidavit of non-compliance. The Court adjourned the January 3, 2014 hearing specifically to give the Debtor the opportunity to testify at his upcoming deposition as to why he could not comply with the Rule 2004 Order. But the Debtor refused to take advantage of any of these opportunities. After reviewing the Deposition Transcript at the hearing on February 19, 2014, the Court found that the Debtor had utterly failed to demonstrate that it was impossible for him to comply with the Rule 2004 Order. The Court then explicitly held in the Failure to Purge

Order that the Debtor had failed to purge the finding of contempt contained in the Contempt Order. Unlike the debtors in <u>Knott</u>, this Debtor has already been given multiple opportunities to purge the finding of contempt by showing impossibility, all of which he has squandered.[2]

The law of the case doctrine requires that "'findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.'" <u>Entertainment Productions, Inc. v. Shelby County, Tenn.</u>, 721 F.3d 729, 742 (6th Cir. 2013) (quoting <u>Rouse v. DaimlerChrysler Corp.</u>, 300 F.3d 711, 715 (6th Cir.2002)); <u>see also</u> <u>United States v. Cunningham</u>, 679 F.3d 355, 376-77 (6th Cir. 2012) ("'[A] decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation.'") (quoting <u>United States v. Todd</u>, 920 F.2d 399, 403 (6th Cir. 1990)). The Court's explicit finding in the Failure to Purge Order that the Debtor had failed to prove impossibility and thereby purge the finding of contempt in the Contempt Order is the law of the case in this adversary proceeding and in the Debtor's bankruptcy case. It precludes the Debtor from having yet another bite of the apple to show that his failure to comply with the Rule 2004 Order was due to impossibility.

As the law of the case, the Contempt Order and the Failure to Purge Order preclude the Debtor from now seeking to show that it was impossible for him to comply with the Rule 2004 Order. But the Court must still determine, for purposes of the Trustee's motion for summary judgment, if there is anything else in the record that creates a genuine issue of fact as to whether the

---

[2] Unbeknownst to the Trustee when she filed this adversary proceeding on February 24, 2014, the Debtor was later given yet another chance – at the evidentiary hearing scheduled for March 26, 2014 – to provide the Court with some explanation, some mitigating circumstances that could perhaps help the Debtor avoid further remedies. However, true to form, the Debtor not only failed to avail himself of that additional opportunity, but he failed to even bother to attend the hearing, despite having been directly ordered by the Court to do so.

-16-

Debtor's non-compliance with the Rule 2004 Order was intentional, in other words, whether he *refused* rather than merely *failed,* to abide by it. The Trustee argues that the Contempt Order and the Failure to Purge Order are by themselves enough to demonstrate that refusal. In response, the Debtor points to the affidavit that he filed in his Chapter 7 case on December 10, 2013 in opposition to the Trustee's original affidavit of non-compliance. Paragraph B of this affidavit states that the Debtor "reviewed" the Rule 2004 Order and that the Debtor "diligently searched for the records" that the order required him to produce. Paragraph D of the affidavit states that the Debtor was submitting to the Trustee "all of the records that I was able to find."

In other circumstances, the Court might conclude that the Debtor's affidavit is enough to raise a genuine question of fact regarding his state of mind. But not here. After the Debtor filed this affidavit, he testified at length in his deposition on January 20, 2014. At the hearing on February 19, 2014, the Court quoted extensively from the Deposition Transcript. Among other things, the Court quoted from the Debtor's testimony that: he did not remember if he threw away his bank statements, but he did not try to obtain them from the banks at which he held his accounts; he took no steps to try to obtain the bank statements seized from him by the DEA; he took no steps to even prepare, let alone deliver to the Trustee, his tax returns for 2010 through 2012 because he "didn't feel right;" he took no steps to obtain the real estate documents that the Rule 2004 Order required him to produce; he took no steps to obtain titles to vehicles listed on his schedules, instead only wishing the Trustee "good luck" in trying to obtain them from the DEA; he took no steps to get another copy of the receipt from the DEA to identify the documents that the DEA had seized from him; and, when asked whether he at least called the DEA to ask for a copy of a receipt, emphasized "No, no, no, no. I'm not calling them for nothing." The Debtor's detailed testimony at his deposition, in which he

-17-

consistently stated that he neither took nor would take any action to obtain the documents that he was ordered to produce by the Rule 2004 Order, establishes more than a mere failure to comply – it establishes a deliberate refusal to comply with the Rule 2004 Order. The Debtor's conclusory, self serving affidavit filed on December 10, 2013 is completely undermined by the Debtor's own subsequent, extensive testimony during his deposition. The Debtor's affidavit does not create a genuine issue of fact regarding the Debtor's state of mind.

The Court holds that the Contempt Order and the Failure to Purge Order, together with the Debtor's own testimony in his deposition, which the Court relied upon in entering the Failure to Purge Order, establish that the Debtor's non-compliance with the Rule 2004 Order was because of his refusal to do so rather than merely a failure to do so. In the circumstances of this case, the Debtor's December 10, 2013 affidavit does not create any genuine issues of material fact as to whether the Debtor refused to comply with the Rule 2004 Order. The record before the Court reveals no genuine issue of material fact that the Debtor wilfully disobeyed the Rule 2004 order and, therefore refused to obey a lawful order of the Court for purposes of § 727(a)(6)(A).

Despite the presence of all of the elements of § 727(a)(6)(A), the Debtor makes one last argument that the Court should consider additional factors, even after finding that he refused to comply with a lawful order. The Debtor relies on In re Barman, which discussed the defense of mistake, and factors that a court should weigh, including whether the debtor has a justifiable excuse, injury to creditors, the debtor's ability to make amends, detriment to the proceedings and the court's dignity, and the potential injury to a debtor if the discharge is denied. In re Barman, 237 B.R. at 352-53.

Even if the Court considers these other factors, the Debtor has not raised any genuine issue of material fact regarding any of them that requires a trial. There is no evidence of mistake or justifiable excuse. And the injury to creditors in this case consists of the fact that the Trustee has been thwarted in her attempts to administer the estate. Without documents that record the Debtor's financial situation and transactions, the Trustee has no ability to investigate the financial affairs of the Debtor, or to administer the estate. Further, the Debtor "making amends" is not a realistic option in this two year old Chapter 7 case, over a year after the Court found the Debtor in contempt. Unlike the debtors in <u>Knott</u>, who had eventually complied with the relevant order in that case prior to the summary judgment hearing, the Debtor still has not complied with the Rule 2004 Order, despite the fact that it is nearly one and a half years since the Debtor stipulated to its entry, and the Debtor does not explain how he would now "make amends" if given another chance. There are no additional factors that warrant the Court denying the Trustee's motion for summary judgment.

The Court has already ruled in prior hearings on each of the Debtor's purported three issues of fact that need to be tried. The Court already rejected the Debtor's argument as to what was agreed to concerning the Rule 2004 Order, found that the Debtor had not made reasonable attempts to comply with his obligations, and found that the Debtor was not excused from complying with the Rule 2004 Order based on impossibility. There are no fact issues to try.

In discussing the standard for summary judgment, the Debtor notes that parties must have a full opportunity to conduct discovery. True enough. But the Debtor does not follow up in his response by arguing that he has somehow had insufficient time to conduct discovery, nor does the Debtor file an affidavit under Fed. R. Civ. P. 56(d), incorporated by Fed. R. Bankr. P. 7056, identifying facts that are essential to his defense that he still needs to discover. Significantly, the

-19-

Debtor also neglects to mention that the time for discovery in this adversary proceeding expired on July 1, 2014, before the Trustee even filed her motion for summary judgment. The Debtor did not take any discovery prior to the discovery cutoff, and it is now too late to do so.

The Debtor has not raised any issues of material fact that are in genuine dispute concerning any of the elements of § 727(a)(6)(A). However, before ruling on the Trustee's motion, the Court must first address the unusual posture of the Trustee's request to deny *or* revoke the Debtor's discharge, which the Trustee acknowledges in her complaint. A discharge can only be denied under § 727(a) if the order of discharge has not yet been entered. Similarly, a discharge can only be revoked under § 727(d) if the order of discharge has already been entered. The Debtor filed his Chapter 7 petition on March 21, 2013, and the deadline to object to his discharge was August 6, 2013. Ordinarily, absent a timely filed objection to discharge, the Debtor would have received a discharge long ago. But in this case, no discharge was ever granted, perhaps because the Debtor failed to file one of the documents that the Bankruptcy Code expressly requires for an individual to be eligible for a discharge. Specifically, the Debtor had not filed his Official Form B23, certifying that he had completed an instructional course concerning personal financial management.[3]

Because the Debtor has not already received a discharge, logic suggests that the substantive relief that the Trustee really seeks is an order denying a discharge, rather than revoking a discharge. But, as noted above, the time to object to discharge under Fed. R. Bankr. P. 4004(a) expired on August 6, 2013, prior to the time when the Trustee filed this adversary proceeding. Fed. R. Bankr. P. 4004(b)(1) permits the Court to extend the time to object to discharge on a motion by a

---

[3] This requirement for a Chapter 7 discharge was added in § 727(a)(11) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

party in interest, but the rule requires that the motion to extend the time be filed before the time has expired. In this case, the Trustee did not file a motion to extend the time to object to discharge before the deadline. That is not at all surprising as the Trustee had no reason to believe that there was a need to file a motion to extend the time to object to discharge when the deadline occurred on August 6, 2013. After all, the facts that the Trustee now relies upon to deny the Debtor's discharge all occurred *after* the deadline to object to discharge had already expired. The Rule 2004 Order, from which all of the Debtor's problems emanate, was only entered by the Court on August 7, 2013, after the deadline to object to discharge had expired.

In 2010, Fed. R. Bankr. P. 4004 was amended by the addition of subparagraph (b)(2) to deal with situations, like the present case, where facts occur, or where facts are just learned, after the deadline to object to discharge has expired, that are sufficient to provide a basis for revocation of discharge under § 727(d) of the Bankruptcy Code, if a discharge has already been entered. The amendment permits a party in interest to file a motion in such circumstances to request an extension of time to object to discharge, even though the deadline to object has already expired. The rule requires that the moving party did not have knowledge of the facts upon which the objection is based in time to permit the objection to have been timely filed. The rule also requires that the motion shall be filed promptly once the movant discovers the facts on which the objection is based.

As pointed out earlier, all of the facts upon which the Trustee's complaint are based – the Rule 2004 Order, the Contempt Order, and the Failure to Purge Order – occurred after the deadline to object to the Debtor's discharge had expired. Those facts, taken together, demonstrate that if the Debtor had received his discharge, the Trustee would be entitled to revoke that discharge under § 727(d)(3) because the Debtor has refused to obey a lawful order of this Court, which is sufficient

to deny discharge under § 727(a)(6)(A). This case seems to be exactly what Rule 4004(b)(2) contemplates: after the deadline to object to discharge has expired, a party in interest learns facts that would provide a basis for revocation of a discharge under § 727(d) if one had been granted, and the party in interest did not know of those facts in time to file a timely objection to discharge.

The procedural problem for the Trustee in this case is that Rule 4004(b)(2) requires a motion to be filed once the party in interest, in this case the Trustee, discovers the facts upon which the objection is based. The Trustee has not filed such a motion in this case. Notwithstanding that fact, in the Court's view, by filing the complaint and alleging the facts contained in the complaint, all of which occurred after the deadline to object to discharge had expired, the Trustee has in substance requested this Court to extend the time to object to the Debtor's discharge on the basis of facts that occurred and were first learned after the deadline to object to discharge expired. The Court therefore views the complaint in this case as the equivalent of a motion to extend the time for the Trustee to object to the Debtor's discharge based upon such facts. Moreover, the Trustee filed this adversary proceeding on February 24, 2014, five days after the Court held the hearing on February 19, 2014 and entered the Failure to Purge Order. The Trustee's filing of the complaint in this adversary proceeding within five days after the Failure to Purge Order was, by any measure, a prompt request by the Trustee to extend the time to object to discharge based upon such facts.

The Debtor did not raise the procedural issue concerning the timing for filing its objection, and the Debtor is likely barred from now raising it.[4] Nonetheless, the Court considers it proper to raise it, and also considers it proper, for the reasons explained, to treat the Trustee's complaint as

_____

[4] According to the Supreme Court, a debtor forfeits "his right to assert the untimeliness of [a complaint objecting to discharge] by failing to raise the issue until after that complaint was adjudicated on the merits." Kontrick v. Ryan, 540 U.S. 441, 458-59 (2004).

also including a request for an extension of time to object to discharge under Rule 4004(b)(2). The Debtor suffers no prejudice as a result of the Court doing so, for the following reasons. If the Court were to treat the complaint as untimely and dismiss it, it is true that the Debtor may be able to obtain a discharge simply by filing his outstanding Form B23. However, the Trustee would still have the right to file an adversary proceeding under § 727(d)(3) to revoke that discharge, based upon the very same facts that the Trustee's complaint presently relies on, for a period of time under § 727(e)(2) of the Bankruptcy Code that extends until "the later of [ ] one year after the granting of such discharge and [ ] the date the case is closed." In other words, the Trustee could still timely file an adversary proceeding and the result would be no different than today: there would still be no genuine issues of material fact, and the Court would revoke the Debtor's discharge based upon the same facts that the Court now relies on.

Undoubtedly, the proper procedure for the Trustee to have followed in these circumstances was to file a separate motion under Rule 4004(b)(2) to extend the time to object to discharge once the Trustee learned the facts that are alleged in her complaint. But the Court now construing the complaint filed by the Trustee to also include a request for extension of time under Rule 4004(b)(2) does not prejudice the Debtor. Therefore, the Court construes the Trustee's complaint as also constituting a motion to extend time pursuant to Rule 4004(b)(2), which the Court will grant. As a result, the Trustee's complaint is timely filed. Because there are no genuine issues of material fact with respect to the allegations contained in the complaint, the Court will grant the Trustee's motion for summary judgment.

## Conclusion

There are no genuine issues of material fact.  All of the elements of § 727(a)(6)(A) are present.  The Court will therefore enter a separate order, consistent with this opinion, granting the Trustee's motion for summary judgment and denying the Debtor's discharge.

.

**Signed on January 21, 2015**

                              **/s/ Phillip J. Shefferly**
                         **Phillip J. Shefferly**
                         **United States Bankruptcy Judge**